# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HUGH HARRISON BAK,

        Defendant-Appellant.

UNPUBLISHED
November 29, 2018

No.  337132
Wayne Circuit Court
LC No.  16-006833-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HUGH HARRISON BAK,

        Defendant-Appellant.

No.  337438
Wayne Circuit Court
LC No.  16-006739-01-FH

---

Before:  JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

In Docket No. 337132, defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1), second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1), and kidnapping, MCL 750.349.  The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 50 to 75 years in prison for the CSC-I and kidnapping convictions, and 10 to 15 years in prison for the CSC-II conviction.  In Docket No. 337438, defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b).  The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 240 months to 30 years in prison for each conviction.  All of defendant's sentences are to be served concurrently.  We affirm in both cases.

These cases arise from defendant's sexual assault of two women in Detroit.  In LC No. 16-006833-01-FC, defendant was charged with sexually assaulting and kidnapping ZC on

-1-

August 17, 2012. In LC No. 16-006739-01-FH, defendant was charged with sexually assaulting JG on July 29, 2009.

In ZC's case, the prosecution presented ZC's testimony that defendant forced her to have sexual intercourse and perform fellatio on him. It also presented DNA evidence linking defendant to the crime. The prosecution further presented the testimony of JG and JP that defendant committed sexual assaults against them to show a common plan or scheme. Defendant testified on his own behalf and claimed that ZC consented to the sex acts for money, but he never paid her. He similarly testified that JG and JP agreed to have sex with him for money, but that he gave JG "novelty money" and he refused to pay JP. A jury convicted defendant of CSC-I, CSC-II, and kidnapping with regard to ZC.

In JG's case, the prosecution presented JG's testimony that defendant forced her to have sexual intercourse and perform fellatio on him. It also presented DNA evidence linking defendant to the crime. The prosecution further presented the testimony of JP that defendant committed a sexual assault against her to show a common plan or scheme. Defendant did not testify at the trial in JG's case, nor was ZC's testimony presented at that trial. A jury convicted defendant of two counts of CSC-III with regard to JG.

## I. DOCKET NO. 337132

Defendant raises two issues on appeal in Docket No. 337132, the case in which defendant was charged with sexually assaulting and kidnapping ZC.

## A. OTHER ACTS EVIDENCE

First, defendant argues that the trial court violated his due process right to a fair trial by admitting prejudicial testimony regarding his prior bad acts under MRE 404(b)(1), that the court unfairly expanded the purposes for which the jury could consider such testimony, and that he was denied the effective assistance of counsel by his trial counsel's failure to object to the improper expansion. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). With regard to the admission of the other acts evidence under MRE 404(b)(1), defendant preserved this issue in part. Although trial counsel initially indicated that he had no objection to the use of JG's testimony in ZC's case, he later objected to its use, arguing that the incidents were too dissimilar to qualify for admission. Trial counsel, however, never expressly objected to the admission of JP's testimony. Defendant also failed to request an evidentiary hearing, or object to the trial court's failure to hold a separate hearing to determine the admissibility of the other acts evidence. Defendant further failed to preserve his claim of prosecutorial misconduct by timely and specifically objecting on that basis below. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant additionally failed to object to the limiting instruction provided by the trial court. Therefore, his claim that the instruction was improper is unpreserved. See *People v Craft*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337754); slip op at 4. Finally, because defendant failed

to raise his claim of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing in the trial court, out review of that issue is limited to errors apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

This Court reviews "preserved claims of evidentiary error for an abuse of discretion." *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (citation and quotation marks omitted). This Court reviews an unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Under this standard,

> [f]irst, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id*. (citations omitted).]

Additionally, "[u]npreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Brown*, 294 Mich App at 382. This Court also "reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017) (citation and quotation marks omitted).

## 2. BACKGROUND

In the case involving ZC, the prosecution filed a pretrial notice of its intent to introduce under MCR 404(b)(1) other acts evidence that defendant sexually assaulted JG, JP, and three other women,[1] to show a common plan or system, under the doctrine of chances, and to rebut the defense of consent, if raised at trial. At a pretrial hearing on December 1, 2016, defense counsel stated that he did not have a legal objection to the admission of ZC's and JG's testimonies in each other's cases, but counsel declined to stipulate to the admission of this testimony.

With regard to the similarities between the cases involving ZC and JG, the prosecutor argued that, in both cases, defendant used an alias, he talked about a job at a salon, he took advantage of a victim with a particular vulnerability (ZC was homeless and JG was pregnant), both victims were black females, both victims were isolated, both cases involved an actual weapon or threat of a weapon, both cases involved vaginal and oral penetration with defendant's penis, defendant told both victims to remove their clothing, both incidents started out as friendly interactions, defendant did not physically assault either victim, and no condom was used in both cases. Defense counsel stated that he objected to all of the other acts witnesses, but he did not have an argument regarding the use of JG's testimony in the ZC case. With regard to the ZC

---

[1] The testimony of the other women was not admitted at trial and, therefore, will not be discussed further.

case, the prosecutor stated that the MRE 404(b) evidence was being offered to show a common scheme or plan, to rebut the defense of consent if raised, and under the doctrine of chances. The trial court ruled that the evidence was admissible to show a common scheme or plan because both involved the use of a salon, both involved black females, both victims were isolated in homes, both involved a knife or threat of a gun or knife, both involved penis to vagina and penis to mouth contact, defendant made both victims remove their own clothing, defendant was friendly before both incidents, and a condom was not used in either case. The trial court further ruled that the probative value of the evidence outweighed its prejudicial effect and, therefore, that it would allow use of the evidence regarding JG in the ZC case.

With regard to the incident involving JP, the prosecutor argued that the act was similar to the ZC case because both cases involved black females, both were vulnerable victims (JP was a drug user), both victims were isolated, there were accomplices in both cases, there was sharing with other men in both cases, both incidents involved penis to vagina and penis to mouth contact, and both interactions began as friendly encounters. The trial court ruled that the evidence would be allowed based on the similarities, including "a black female, a vulnerable [sic], isolated, accomplice, penis to vaginal, penis to mouth, coordinated, sharing,"

At trial, after the first portion of JG's testimony was given, trial counsel again objected to the admission of her testimony under MRE 404(b)(1), arguing that the two incidents involved a different motive and modus operandi. The prosecutor argued that JG's testimony was not offered for a modus operandi purpose, but to show a common scheme, plan, or system. The prosecutor argued that the testimony already given by JG, and that which would still be provided, was admissible to show a common scheme or plan. Defense counsel argued, however, that there was no common scheme or plan because one incident involved a job offer and the other was a date rape. The prosecutor argued that the similarities were that defendant used an alias, said that he had jobs at a salon (which the prosecutor stated that JG had not yet testified about), both victims were vulnerable, both were black females, and both were lured to an isolated location. The trial court stood by its earlier ruling and stated that trial counsel could prepare a limiting instruction.

With regard to the limiting instruction, the prosecutor stated that M Crim JI 4.11, which related to evidence of other offenses relevant and limited to a particular issue, had already been included. The prosecutor noted that, at that point, the purpose of rebutting defendant's claim of consent was "in brackets." Trial counsel expressed satisfaction with the proposed instruction, but stated that he would take a closer look at it. Trial counsel subsequently indicated that he was satisfied with the proffered MRE 404(b) limiting instruction. In its instructions to the jury, the trial court instructed the jury that it could consider the evidence that defendant committed other crimes in order "to show that the defendant used a plan, system, scheme, or characteristic scheme that he has used before or since and or to rebut the defendant's claims of fabrication and or to rebut the defendant's defense of consent." Defense counsel did not object to the instructions.

3. MRE 404(b)

The testimony of JG and JP was admitted under MRE 404(b)(1), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

As this Court stated in *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009):

For evidence of other crimes, wrongs, or acts to be admissible under MRE 404(b)(1), the proponent of the evidence must show three things: (1) that the other acts evidence is for a proper purpose (other than to show character and action in conformity therewith), (2) that the evidence is relevant to an issue of fact that is of consequence at trial, and (3) that, under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. [Citation omitted.]

In this case, the other acts evidence was admitted to show a common plan or scheme. As the Michigan Supreme Court stated in *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002):

[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. For other acts evidence to be admissible there must be such a concurrence of common features that the uncharged and charged acts are naturally explained as individual manifestations of a general plan. [Citation omitted.]

Where the other acts evidence is used to prove that the charged act occurred, "the degree of similarity between the uncharged and charged conduct required as a threshold for admissibility in such a case [is] higher than that needed to prove intent, but not as great as that needed to prove identity." *Id*. at 251-252. Moreover, "distinctive and unusual features are not required to establish the existence of a common design or plan. The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *Id*. at 252-253. In *Hine*, the Court concluded that evidence of the defendant's prior assaults was properly admitted where the charged and uncharged acts "contained common features beyond similarity as mere assaults." *Id*. at 253.

In *Steele*, 283 Mich App at 480, this Court concluded that there was a concurrence of common features where one aspect of the defendant's plan was to engage in touching women and girls in public areas where such conduct could be seen. This Court stated that, although there were dissimilarities between the charged acts and other bad acts, "a high degree of similarity is not required," nor are distinctive or unusual features required. *Id*.

More recently, however, in *People v Denson*, 500 Mich 385, 403; 902 NW2d 306 (2017), the Michigan Supreme Court held that if the prosecution creates a theory of relevance based on

-5-

the alleged similarity between the other act and the charged offense, it is necessary to show a "striking similarity" between the acts in order to be admissible. In *Denson*, the Court concluded that the only similarity between the other act and the charged offense was that both were assaults committed by the defendant and, therefore, the other-acts evidence was inadmissible. *Id*. at 407-408.

### 4. ADMISSION OF JG'S TESTIMONY

In the case involving ZC, the trial court admitted JG's testimony to show a common scheme or plan based on the following similarities between the incidents involving ZC and JG: (1) defendant's use of a salon in both cases, (2) both victims were black females, (3) both victims were isolated in homes, (4) both cases involved a knife or threat of a gun or knife, (5) both incidents involved penis to vagina and penis to mouth contact, (6) defendant made both victims remove their own clothing, (7) defendant was friendly before both of the assaults, and (8) a condom was not used in either case. Because the prosecution's theory of relevance was based on the alleged similarity between the other act and the charged offense, the prosecution was required to show a "striking similarity" between the acts. *Denson*, 500 Mich at 403.

It is undisputed that ZC and JG were both black females, who were each vulnerable in some way—ZC was homeless and JG was pregnant. Defendant began his interaction with both victims in a friendly manner, but then isolated them in a home, had or implied that he had a weapon,[2] told them to remove their clothing, and had vaginal and oral sex with them.[3] Although each victim's vulnerability and the way in which she was isolated by defendant was different, the fact that defendant isolated vulnerable women in order to sexually assault them, in addition to the other similarities, shows "a concurrence of common features" sufficient to establish a common scheme or plan. *Hine*, 467 Mich at 251. As in *Hine*, the charged and uncharged acts in this case "contained common features beyond similarity as mere [sexual] assaults." *Id*. at 253. Although there were some differences between the acts, the similarities were sufficient to show a "striking similarity" between the charged act and the uncharged act. *Denson*, 500 Mich at 403. Moreover, while defendant argues that some of the alleged similarities, such as the victims' race and that defendant was friendly at first, were superficial, unusual or distinctive features are not required. *Hine*, 467 Mich at 252-253. While the race of the victims, that defendant was friendly at first, that he told the victims to remove their clothes, the type of sexual acts, and the absence of a condom might not have been sufficient alone to establish a striking similarity between the charged and uncharged acts, the combination of these factors helped to show a common scheme or plan.

Defendant argues that the prosecutor engaged in misconduct when she alleged that both incidents involved a salon, but JG never testified about a salon or job offer at trial. "[T]he test

---

[2] JG testified that defendant asked her why she would come to a house with a stranger not knowing if he had "anything," implying that he had a weapon.

[3] JG did not testify about the absence of a condom, but defendant testified that he did not use a condom with any of the victims.

for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). As indicated, the prosecutor alleged that defendant's discussion about a job at a salon was a similarity between the incidents involving ZC and JG, and the trial court referred to this similarity in admitting JG's testimony. At trial, however, while ZC testified that defendant said he had a job at a hair salon, JG never mentioned a salon or a job offer. Nonetheless, defendant fails to establish any error in the prosecutor's conduct. While JG did not testify about a salon in this case, she testified in defendant's other case that defendant said he was a "hairstylist" or "beautician." Accordingly, defendant fails to establish that the prosecutor misled the trial court. Rather, it appears that the prosecutor merely failed to elicit testimony about this similarity at trial. Nonetheless, even without this similarity regarding the way defendant and the victims met, there was a "striking similarity" between the incidents based on the other factors discussed above. Defendant was not denied a fair trial by the prosecutor's argument.

Defendant further argues that the trial court abused its discretion by failing to hold a hearing outside the presence of the jury to ensure that the other acts were similar enough to prove a common scheme or plan. Defense counsel, however, never requested such a hearing and defendant fails to provide any authority to support his claim that a hearing was required. Moreover, defendant fails to establish that the prosecutor made any misleading statements that would have been revealed at a hearing. Further, because the charged and uncharged acts were sufficiently similar to establish a common plan or scheme based on the testimony given at trial, the failure to hold a hearing did not affect the outcome of the case.

With regard to MRE 403, the trial court balanced the effect of JG's testimony and ruled that the probative value of her testimony outweighed any prejudicial effect. Defendant argues that the trial court did not apply the correct standard under MRE 403. For evidence to be excluded under MRE 403, "the danger of unfair prejudice" must "substantially outweigh the probative value of the evidence." *Steele*, 283 Mich App at 479. By finding that the probative value of JG's testimony was greater than the prejudicial effect, the trial court necessarily determined that the danger of unfair prejudice did not substantially outweigh the probative value. This was not an abuse of discretion. Given the similarities between the incidents, and in light of defendant's claim that the acts with ZC were consensual, the evidence of defendant's nonconsensual sexual assault of JG was highly relevant to establish a common scheme or plan to commit a sexual assault, and thereby rebut defendant's claim that the acts with ZC were consensual.[4] Although defendant argues that the time between the incidents (approximately 3 years) limited the logical relevance of the other act, see *Denson*, 500 Mich at 407 n 11, the "striking similarity" increased its relevancy, and there is no time limit applicable to MRE 404(b). *Id*. (citation omitted). Moreover, the trial court provided a limiting instruction to the jury regarding the limited, permissible use of the evidence, stating that the jury could not use the

---

[4] Although the use of other acts evidence to rebut a defense of consent was treated as a separate purpose below, by claiming that ZC consented to the sexual acts, defendant disputed that a sexual assault occurred. The other acts, which showed a common plan or scheme, were relevant to showing that an assault on ZC did occur.

evidence to show that defendant is likely to commit crimes, and jurors are presumed to follow their instructions. *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Therefore, the trial court did not abuse its discretion by admitting JG's testimony under MRE 404(b)(1) to show a common plan or scheme.

## 5. ADMISSION OF JP'S TESTIMONY

The trial court also admitted JP's testimony to show a common scheme or plan based on the following similarities: (1) both victims were black females, (2) both victims were vulnerable, (3) both victims were isolated, (4) both cases involved accomplices, (5) both cases involved penis to vagina contact and penis to mouth contact, and (6) there was sharing with other men in both cases.[5] Again, given that the prosecution's theory of relevance was based on the alleged similarity between the other act and the charged offense, the prosecution was required to show a "striking similarity" between the acts. *Denson*, 500 Mich at 403.

With regard to the similarities between the incidents involving ZC and JP, the trial testimony established that both victims were black females who were vulnerable in some way— ZC was homeless and JP was drinking alcohol and using drugs.[6] Defendant began both interactions in a friendly manner, but then isolated each victim, told both of them to remove their clothing, and forced both of them to have vaginal intercourse.[7] Both incidents also involved other men who had sex with the victims. As defendant points out, some of the similarities between the incidents involving ZC and JG did not exist in JP's case. For example, there was no weapon or threat of a weapon. Nonetheless, there was a concurrence of common features between the incidents involving ZC and JP sufficient to establish a common scheme or plan.[8] *Hine*, 467 Mich at 251. As in *Hine*, the charged and uncharged acts "contained common features

---

[5] The trial court additionally stated "coordinated," but it is unclear what this meant. It is possible that the trial court meant "cordial," given that the prosecutor argued that both incidents started out as friendly or cordial.

[6] Although there was no specific testimony that defendant knew that JP was using drugs, JP testified that they were "all out there drinking" and the men were going to buy "more drinks." This testimony supports an inference that defendant was aware that she was drinking alcohol.

[7] Although the prosecutor argued that both incidents involved oral sex, JP did not testify about oral sex. Defendant argues, however, that the incident involving JP did involve oral sex and he testified similarly at trial. JP additionally claimed that defendant tried to have anal sex with her, which ZC did not claim.

[8] The differences between the incidents involving JG and JP will be discussed with regard to admission of JP's testimony in the case involving JG. Defendant suggests that the prosecutor was required to show that all three incidents were sufficiently similar. However, nothing requires other acts to be similar to one another, as long as they are similar to charged conduct. Nonetheless, all three incidents involved a black female who was vulnerable, the interactions began cordially, and defendant isolated the victims, told them to remove their clothing, and sexually assaulted them.

-8-

beyond similarity as mere [sexual] assaults." *Id*. at 253. Again, while there were some differences, the similarities were sufficient to show a "striking similarity" between the charged and uncharged acts. *Denson*, 500 Mich at 403.

With regard to MRE 403, the trial court did not expressly apply the balancing test regarding JP's testimony. As discussed earlier, however, trial counsel objected without argument to the admission of her testimony and, therefore, his claim is unpreserved. For the same reasons discussed above, there was no plain error in the admission of JP's testimony because the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. The other acts evidence was highly relevant to show that a nonconsensual sexual assault against ZC occurred. Although the amount of time between the incidents involving ZC and JP was even greater (approximately 14 years), again, the "striking similarity" between the acts made the other act evidence highly relevant and there is no time limit applicable to MRE 404(b) evidence. And, again, the trial court's limiting instruction served to lessen any prejudicial effect. Therefore, the trial court did not plainly err by admitting JP's testimony under MRE 404(b)(1) to show a common plan or scheme.

## 6. LIMITING INSTRUCTION AND INEFFECTIVE ASSISTANCE OF COUNSEL

While the trial court provided an instruction to the jury that limited the purposes for which the other acts evidence could be used, lessening any prejudicial effect of the evidence, defendant argues that the limiting instruction was not adequate and trial counsel was ineffective for failing to object to the instruction. Upon request, the trial court may provide a limiting instruction regarding the use of MRE 404(b) evidence. *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994). Defendant claims that the limiting instruction was improper because the jury was instructed that it could use the prior acts to show lack of consent, but the other acts evidence was not admitted for that purpose. Defendant is correct that, while the prosecutor sought admission to show lack of consent, the trial court never expressly admitted the other acts evidence for that purpose. Nonetheless, when the trial court asked trial counsel whether the limiting instruction was "the way you want it," he replied, "Yes, I believe it's satisfied, the instruction." Trial counsel's express satisfaction with the instruction constituted a waiver. *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017).

Even if the issue is not waived, defendant fails to establish plain error in the limiting instruction. As noted, the prosecutor initially sought admission of the other acts evidence to rebut the defense of consent, if presented at trial, but the trial court only ruled that the evidence could be used to show a common plan or scheme. Subsequently, when discussing the limiting instruction, the prosecutor noted that the portion regarding use of the evidence to rebut the defense of consent was "in brackets," implying that this meant that this portion would only be read if defendant presented a defense of consent. Defendant ultimately testified and claimed that ZC consented to the sexual acts. The trial court instructed the jury, without objection, that evidence was presented "about the defense of consent." Given that the defense of consent was presented, the other acts evidence was relevant to rebut that defense and there was no plain error in instructing the jury on this purpose. Contrary to defendant's claim, he was given reasonable notice of this purpose, which was listed in the prosecution's pretrial notice and noted at the hearing before trial.

With regard to defendant's claim of ineffective assistance of counsel, he is required to show both "that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft*, 299 Mich App at 80-81. As noted, trial counsel did not object to the limiting instruction. This was reasonable given that evidence of the defense of consent was presented. Because the other acts evidence was relevant to rebut the defense of consent, trial counsel's objection would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Moreover, the use of the evidence to show that a sexual assault occurred was essentially the same as using the evidence to rebut the defense of consent; thus, defendant was not prejudiced by allowing the other acts evidence for this purpose.

## B. ADMISSION OF PRELIMINARY EXAMINATION TESTIMONY

Defendant also argues that the trial court violated his constitutional right to confrontation and the prohibition against hearsay by declaring ZC unavailable under MRE 804(a)(2) and allowing her preliminary examination testimony to be read into the record at trial. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

In the trial court, defendant objected to the use of ZC's preliminary examination testimony, arguing that ZC should not be considered unavailable, the preliminary examination testimony was not sufficient for use at trial, and dismissal was required when ZC failed to appear at trial. Although trial counsel did not expressly mention hearsay in his objection, he was responding to the prosecutor's argument that the evidence was admissible under MRE 804(a)(2), which is a hearsay exception. Thus, defendant's hearsay claim is preserved. See *Aldrich*, 246 Mich App at 113. Defendant's Confrontation Clause claim, however, was not raised below and is, therefore, unpreserved. See *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

This Court reviews preserved claims of evidentiary error for an abuse of discretion. *Bergman*, 312 Mich App at 482. "Unpreserved constitutional issues are reviewed for plain error that affected a defendant's substantial rights." *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004).

### 2. BACKGROUND

After the jury was selected on the first day of trial, the prosecution informed the trial court that ZC had appeared for court, but indicated that she was unwilling to answer any questions on the stand. The prosecutor stated, "She cannot brace herself to speak about this again." The prosecutor requested that the court declare ZC unavailable and allow the prosecution to proceed using the transcript of ZC's preliminary examination testimony. Trial counsel objected and requested that the court question ZC. The trial court swore ZC as a witness and ordered her to testify in this matter. When asked if she would follow the court's order, ZC answered, "No." The prosecutor again requested that the trial court declare ZC unavailable pursuant to MRE 804(a)(2) because she was refusing to testify despite the court's order to do so

and requested that the trial court allow the prosecution to use the transcript of ZC's testimony from the preliminary examination, where she was cross-examined by defendant's prior attorney. Trial counsel stated that, before responding, he wanted to know what procedures would be followed if the trial court were to find ZC unavailable. The parties were unable to agree on the appropriate procedure to follow, and the trial court announced its intent to further address this issue after the lunch break.

After the break, the prosecutor informed the trial court that ZC had been instructed to return after the break, but she had not returned. The trial court asked why it should not dismiss the case because of a missing witness, and the prosecutor responded that due diligence was shown because ZC was served with a subpoena, the previous day she had indicated that she intended to come to court, and she was brought to court that morning. Trial counsel argued that this case was different because ZC was not asserting a constitutional right not to testify and that, although a preliminary examination was held, defendant was represented by a different attorney and witnesses are examined differently at a preliminary examination than at trial. Trial counsel argued that the proper remedy was to dismiss the case. The trial court denied the request, found that the prosecution established unavailability because ZC refused to testify even though she was ordered to do so, and ZC refused to appear despite "good cause" in trying to procure her attendance at trial. Trial counsel objected to use of ZC's preliminary examination testimony and argued that the cross-examination of ZC at the preliminary examination was not sufficient for trial. The trial court found, however, that her preliminary examination testimony met the criteria for reliability.

### 3. ADMISSION OF ZC'S PRELIMINARY EXAMINATION TESTIMONY

MRE 804(b)(1) provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In this case, the trial court found that ZC was unavailable under MRE 804(a)(2), which provides that a witness is unavailable if he or she "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so[.]" The trial court also found that ZC was unavailable under MRE 804(a)(5), which provides that a witness is unavailable if he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."

In *People v Adams*, 233 Mich App 652, 659; 592 NW2d 794 (1999), this Court concluded that, based on the totality of the circumstances, the complainant was "unavailable" for purposes of MRE 804(a)(2). The complainant testified at the preliminary examination despite being reluctant to do so, as she had been shot after having previously testified. *Id*. at 654. The complainant appeared at court on the day of trial, but then left abruptly before the proceedings began without informing the prosecutor. *Id*. at 655. The trial court gave the prosecution

approximately two hours to search for her, but the search was unsuccessful. *Id*. This Court stated:

> [W]hile a complainant's eleventh-hour decision to leave the courthouse rather than testify at trial is not expressly addressed under MRE 804(a), it is also of the same character as other situations outlined in that rule of evidence. Although neither this Court nor the trial court has a statement or affidavit from the complainant explaining why she left the courthouse, her absence coupled with the type of crimes with which defendant was charged and her statements during the preliminary examination regarding the threats to her by others connected to defendant paint a fairly vivid picture. They do not, as the trial court surmised, equally support the conclusion that she wanted to "drop the charges." We are cognizant that all too often, the victims of domestic assault and abuse are fearful and reluctant to assist in the prosecution of their assailants, often as a result of a defendant's or his family's intimidation tactics or out of fear of future reprisals. These fears are too often justified. We cannot simply conclude that the complainant's last-minute decision to silently leave the courthouse was motivated by her belief that defendant would not be prosecuted without her testimony or that by leaving she would not face his wrath in the future. To the contrary, our experience in these matters makes us more likely to believe that her departure was motivated by self-preservation rather than a change of heart.
>
> The complainant's abrupt departure, without a word to the prosecuting attorney, and her evasion from detection thereafter also made her unavailable under the "ordinary meaning of the word." When someone is not available, that person is not "at hand," "readily obtainable; accessible," or "free or ready to be seen, spoken to." [*Id*. at 658-659 (citations omitted).]

In a footnote, this Court stated that it did not conclude that the prosecution was required to establish unavailability under MRE 804(a)(5) and noted that it had not found any cases "where the due diligence requirement has been applied to witnesses who appear to testify and then disappear before testifying." *Id*. at 659 n 5. The Court further stated that "because the complainant initially appeared . . . pursuant to a subpoena, her departure constituted *refusal* to testify *despite an order of the court* to do so[.]" *Id*. at 659 n 6, quoting MRE 804(a)(2).

In this case, ZC appeared for trial, but refused to testify. When directed by the trial court to testify, she refused to do so. ZC then abruptly left during a break without informing the prosecutor and despite being told to return. Initially, it appears that MRE 804(a)(5) does not apply in this case. See *Adams*, 233 Mich App at 659 n 5. Nonetheless, it is unnecessary to find that ZC was unavailable under MRE 804(a)(5) because she was clearly unavailable under MRE 804(a)(2).[9] Given the trial court's order to testify and ZC's refusal to do so, she was unavailable because she "persist[ed] in refusing to testify concerning the subject matter of the declarant's

---

[9] Accordingly, it is unnecessary to consider the efforts used to locate ZC after she disappeared at trial.

statement despite an order of the court to do so[.]" MRE 804(a)(2). Defendant claims that ZC did not "persist" in refusing to testify because she only said no to the trial court one time. "Persist" means "to continue steadily or firmly in some state, purpose, or course of action, in spite of opposition or criticism." *Random House Webster's College Dictionary* (1997). While the phrase "to continue" does suggest that the witness must refuse to testify multiple times, here, the prosecution subpoenaed ZC, so she was already under order to testify when she informed the prosecutor she would not testify. See *People v Garay*, 320 Mich App 29, 37 n 1; 903 NW2d 883 (2017), overruled in part on other grounds by *People v Skinner*, 502 Mich 89 (2018). ZC again refused to testify when she was called to the stand and ordered by the trial court to do so. Moreover, her failure to return after the break constituted another refusal to testify despite the court's order to do so. Contrary to defendant's suggestion, ZC's reason for refusing to testify is not relevant to the analysis under MRE 804(a)(2).[10] The trial court did not abuse its discretion by finding that ZC was unavailable.

Given that ZC was unavailable, "MRE 804(b)(1) permits the trial court to admit into evidence her former testimony from the preliminary examination because defense counsel had an opportunity and similar motivation to develop her testimony on cross-examination." *Adams*, 233 Mich App at 659. Defendant claims that MRE 804(b)(1) does not apply because the preliminary examination testimony was more limited, discovery had not occurred, and his theory of the case had not yet been developed at the time of the preliminary examination. In determining whether a party had a similar motive to examine a witness at the prior proceeding, this Court considers:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings-both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007) (citation and quotation marks omitted).]

The purpose of the preliminary examination was to determine whether there was probable cause to believe that defendant committed the offenses and, therefore, the prosecution's burden of proof was lower than its burden at trial. See *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003). Defendant, however, had a substantially similar interest in proving that he did not commit the offenses and his attorney cross-examined ZC at the preliminary examination and attempted to cast doubt on her credibility. Moreover, defendant fails to identify any particular information that he was unable to use at the preliminary examination, but that he would have used at trial. Therefore, the trial court did not abuse its discretion by ruling that MRE 804(b)(1) applied. Thus, the admission of the preliminary examination testimony did not violate the

---

[10] In *Garay* and *Adams*, this Court discussed the witnesses' reasons for refusing to testify in concluding that, although the circumstances were not expressly addressed under MRE 804(a), they were of the same character as other situations encompassed by the rule. *Garay*, 320 Mich App at 36-37; *Adams*, 233 Mich App at 658-659.

hearsay rule. Moreover, "[b]ecause MRE 804(b)(1) is a hearsay exception firmly rooted in American jurisprudence, the Confrontation Clause is satisfied when the complainant's prior testimony is admitted because that testimony bears satisfactory indicia of reliability, without more." *Adams*, 233 Mich App at 659-660. Accordingly, the trial court did not abuse its discretion or err by allowing the prosecutor to use ZC's preliminary examination testimony at trial.

## II. DOCKET NO. 337438

Defendant also raises two issues on appeal in Docket No. 337438, the case in which defendant was charged with sexually assaulting JG.

## A. OTHER ACTS EVIDENCE

First, defendant argues that he was denied a fair trial by the trial court's erroneous admission of JP's other acts testimony to show a common plan or scheme under MRE 404(b). We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

Defendant failed to preserve his claim regarding the admission of the other acts evidence in this case. With regard to JP's testimony, trial counsel indicated that he did not have a legal objection to the admission of her testimony given its admission in the other case. See *Aldrich*, 246 Mich App at 113.[11] Accordingly, we review this unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *Coy*, 258 Mich App at 12.

## 2. BACKGROUND

At a pretrial hearing, the prosecutor noted that two MRE 404(b) notices were filed in this case, one of which related to defendant's sexual misconduct against several women. After the prosecutor listed the similarities between the incidents involving ZC and JG, the trial court ruled that the probative value outweighed the prejudicial effect and that it would allow use of the evidence regarding ZC in the JG case. The admission of JP's testimony in the case involving JG was not discussed at the hearing.

On the first day of trial, trial counsel noted that the trial court had already ruled that ZC's testimony was admissible and stated that he did not have a legal argument against the admission of JP's testimony, which was allowed in the previous trial. With regard to the similarities between JG and ZC, the trial court adopted the prosecutor's statements that defendant used an alias in both cases, defendant said that he had a salon job, the victims were vulnerable, the victims were both black females, both were isolated, defendant used or threatened to use a weapon, both were vaginally and orally penetrated, both victims were told to remove their

---

[11] As discussed further below, trial counsel also did not object to the admission of ZC's testimony under MRE 404(b), but her testimony was not admitted so it will not be discussed.

-14-

clothes, both interactions started out friendly, no beating was involved, and no condom was used. The trial court further relied on its findings in the first case. With regard to the similarities between JG and JP, the trial court also adopted the prosecutor's statements that both offenses involved vulnerable victims, both were black females, both were isolated, both were penetrated vaginally and orally, both interactions started out friendly, and no beating was involved. The trial court further relied on its rulings in the first case.

On the second day of trial, the trial court asked the prosecutor to again list the similarities between JG's case and the other acts to be introduced. The prosecutor listed the similarities between JG's and ZC's cases and argued that the other acts evidence would be introduced to show a common plan or scheme, under the doctrine of chances, and to rebut the defense of consent. The trial court ruled that the evidence would be admitted to show a common plan or scheme. The trial court additionally found that the probative value of the evidence outweighed any unfair prejudice and trial counsel requested that the same limiting instruction from the first case be used in this case. The trial court additionally ruled that the prosecutor could use the evidence to rebut the defense of consent and trial counsel did not object.

With regard to the similarities between the incidents involving JG and JP, the prosecutor argued that both victims were vulnerable, both were black females, both were isolated, both were penetrated vaginally and orally, both interactions began as friendly, and both victims sustained no beating. The trial court also ruled that it would allow JP's testimony to show a common plan or scheme based on its findings that both victims were vulnerable, both were black females, both were isolated, both involved vaginal and oral penetration, and both interactions began as friendly encounters. The trial court additionally found that the prejudicial effect of the evidence did not outweigh its probative value.

As discussed further below, when ZC did not appear for trial, the trial court refused to declare her unavailable, finding that the prosecution failed to show due diligence to secure her appearance. Therefore, although the trial court had ruled that ZC's testimony was admissible under MRE 404(b), it was never admitted. Accordingly, it is not necessary to further consider the admissibility of her testimony.

### 3. ADMISSION OF JP'S TESTIMONY

With regard to the similarities between the incidents involving JG and JP, the trial court adopted the prosecutor's statements that (1) both involved vulnerable victims, (2) both victims were black females, (3) both victims were isolated, (4) both victims were penetrated vaginally and orally, (5) both interactions started out friendly, and (6) no beating was involved. As in the first case, because the prosecution's theory of relevance was based on the alleged similarity between the other acts and the charged offense, the prosecution was required to show a "striking similarity" between the acts. *Denson*, 500 Mich at 403.

The testimony established that the incidents involving JG and JP both involved a black female victim who was vulnerable in some way—JG was pregnant and JP was using drugs and

alcohol.[12] Both interactions were initially cordial, but then defendant isolated the victims and forced them to have sex with him. As in the first case, although each victim's vulnerability and the way in which she was isolated by defendant was different, the fact that defendant isolated vulnerable women in order to sexually assault them, in addition to the other similarities, shows "a concurrence of common features" sufficient to establish a common scheme or plan. *Hine*, 467 Mich at 251. As in *Hine*, the charged and uncharged acts in this case "contained common features beyond similarity as mere [sexual] assaults." *Id*. at 253. Although there were some differences, including whether there was a weapon or accomplices, the similarities were sufficient to show a "striking similarity" between the charged and uncharged acts. *Denson*, 500 Mich at 403. Moreover, while defendant argues that some of the alleged similarities, such as the victims' race and that defendant was friendly at first, were superficial, unusual or distinctive features are not required. *Hine*, 467 Mich at 252-253. While the race of the victims, that defendant was friendly at first, and the type of sexual act involved might not have been sufficient alone to establish a striking similarity between the charged and uncharged acts, the combination of these factors helped to show a common scheme or plan. With regard to the fact that no beating was involved in either case, we agree with defendant that the absence of a factor should not be considered a "similarity," otherwise there would be infinite "similarities" between two incidents. Nonetheless, even without the alleged "similarity" that no beating was involved, there were sufficient similarities between the incidents involving JG and JP to establish a common plan or scheme.

With regard to MRE 403, the trial court found that the prejudicial effect of JP's testimony did not outweigh the probative value. Again, in so ruling, it necessarily found that the danger of unfair prejudice did not substantially outweigh the probative value of the other acts evidence, which is required for exclusion under MRE 403. The other acts evidence was highly relevant to show that a sexual assault against JG occurred and to show lack of consent. Despite the 11-year gap between the incidents, the two incidents bore a "striking similarity" and there is no time limit on other acts evidence. *Denson*, 500 Mich at 403, 407 n 11. The trial court also provided a limiting instruction, limiting the purposes for which the other acts evidence could be used and lessening the prejudicial effect. Accordingly, there was no plain error in the admission of JP's testimony to show a common plan or scheme under MRE 404(b).

## B. MISTRIAL

Defendant also argues that the trial court erred by failing to declare a mistrial and instead providing a limiting instruction when ZC failed to appear as a witness after the prosecutor referenced ZC's anticipated testimony in her opening statement to the jury. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

---

[12] Defendant argues that there was no evidence that he knew that JP was using drugs or alcohol, but JP testified that her interaction with the men involved "[s]ociably drinking and getting high" and the men asked her to come with them so they "could buy more drinks."

Defendant did not move for a mistrial based on ZC's failure to appear for trial after the prosecutor mentioned her anticipated testimony in her opening statement. Therefore, this issue is unpreserved. See *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2001). The Michigan Supreme Court has stated that it is within a trial court's discretion whether to sua sponte declare a mistrial on the basis of manifest necessity. *People v Clark*, 453 Mich 572, 581 n 6; 556 NW2d 820 (1996) (opinion of MALLET, J.). However, because defendant did not preserve his claim by moving for a mistrial, the issue is reviewed for plain error affecting defendant's substantial rights. *Nash*, 244 Mich App at 96-97.

## 2. BACKGROUND

At the start of the second trial, the prosecutor informed the trial court that ZC had "found the strength to participate in the trial" and the prosecutor anticipated that ZC would testify. Trial counsel objected to ZC testifying because she refused to testify in the other case, but the trial court ruled that she could testify.

In her opening statement, the prosecutor stated that the jury would hear from ZC that defendant sexually assaulted her in 2012. The prosecutor described ZC's anticipated testimony, including that defendant lured her from a homeless shelter with the promise of a job, took her to a home with two other men, penetrated her vaginally and orally at knife point, and then allowed another man to penetrate her orally.

After the lunch break on the third day of trial, the prosecutor informed the trial court that ZC was not there and could not be located that morning. ZC had not been issued a subpoena in this case, but was told to appear to testify and had said that she would be there. Defense counsel requested that the missing witness instruction be read to the jury. Counsel argued that ZC was an endorsed witness, the prosecutor had mentioned ZC in her opening statement, and the prosecutor had introduced lab reports regarding ZC. The prosecutor requested that the trial court declare ZC unavailable under MRE 804(a)(5). The court denied the request to declare ZC unavailable, finding that the prosecution failed to show due diligence to secure her presence. The court also struck the lab reports that were previously admitted and indicated that it would instruct the jury to disregard any testimony about those reports. The trial court ruled that it would give the missing witness instruction because the prosecution told the jury what ZC was going to say when it could have just not mentioned her if it was worried that she would not attend trial. The trial court thereafter instructed the jury that it should not pay attention to the lab reports regarding ZC because they were not going to be admitted into evidence and that the testimony regarding ZC's lab reports or anything concerning ZC was stricken and should be disregarded. In its final instructions to the jury, the trial court instructed the jury that ZC was a missing witness whose appearance was the responsibility of the prosecution and "[y]ou may infer that this witness' testimony would have been unfavorable to the prosecution's case."

## 3. FAILURE TO DECLARE A MISTRIAL

As this Court stated in *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004):

> A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to
> exercise due diligence to produce that witness at trial. A prosecutor who fails to

produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [Citations omitted.]

As indicated, the trial court found that the prosecution failed to exercise due diligence in producing ZC for trial and instructed the jury that it could infer that ZC's testimony would have been unfavorable to the prosecution's case. Defendant does not dispute the trial court's finding that due diligence was not shown. Rather, he claims that the missing witness instruction was not sufficient because of the prosecutor's express references to ZC's anticipated testimony in her opening statement to the jury. Defendant argues that the trial court should have instead sua sponte declared a mistrial based on manifest necessity.

Defendant fails to establish that the trial court's failure to sua sponte declare a mistrial constituted plain error affecting his substantial rights. While defendant claims that the jury likely considered the prosecutor's statements regarding ZC's proffered testimony to convict him, the trial court initially instructed the jury that opening statements "are not evidence" and then subsequently instructed the jury that "[t]he lawyers statements and arguments and any commentary are not evidence." Jurors are presumed to follow their instructions. *Mullins*, 322 Mich App at 173. Given these instructions, defendant also fails to show that manifest necessity existed for a mistrial. This Court has stated that, while there is no precise test concerning manifest necessity, "it appears to refer to the existence of sufficiently compelling circumstances that would otherwise deprive the defendant of a fair trial or make its completion impossible." *People v Rutherford*, 208 Mich App 198, 202; 526 NW2d 620 (1994). The trial court's instructions that the lawyers' statements and arguments are not evidence, that the jury should disregard all lab reports and any testimony regarding ZC, and that the jury was permitted to infer that ZC's testimony would have been unfavorable to the prosecution's case, all served to protect defendant's right to a fair trial. Because the jury is presumed to have followed its instructions, defendant was not deprived of a fair trial.

Finally, with regard to defendant's claim that trial counsel was ineffective for failing to move for a mistrial, defendant fails to overcome the presumption that trial counsel's decision to request the missing witness instruction, rather than request a mistrial, was strategic. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Moreover, given that defendant fails to establish the existence of manifest necessity, it is not reasonably probable that the trial court would have declared a mistrial even if requested. Therefore, defendant fails to establish prejudice.

III. CONCLUSION

For the reasons stated above, defendant's convictions and sentences are affirmed in

Docket Nos. 337132 and 337438.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello